My name is Mike Purcell. I'm the attorney for Petitioner Alexander Purcarelu. This is an appeal from the Board of Immigration Appeals. The circumstance of this case is that there's not too much to dispute about the actual law. The question is what is to be drawn from the immigration judge. In this particular case, we have a situation involving a country, Romania, that had gone through a number of political changes. There had been a revolution in 1989, which was actually more of a change of name of the ruling party, which went from communists to socialists. There had been, I guess, two other changes, but at least in the position of Petitioner, the change had not mattered too much. Now, in this particular case, the Immigration Court held that there had not been a suffering of past persecution. Now, the two cases that this Court has decided that are, I think, closest in point, the Rwanda case and the Lim case, and both those cases were presented on similar procedural grounds. Obviously, the facts are different. I think Rwanda was a Philippines case. Excuse me. Rwanda was a Guatemala case, and Rwanda was a Philippines case. The counsel, aren't these cases peculiarly, factually driven? So, if the facts are different, then how can those cases support your position then? Well, I don't think they're completely factually driven. Otherwise, we would not, you know, have reported cases. We have to at least contrast some of the circumstances there and determine whether there was sufficient showing, in this case, that the reasonable decision-maker could not have ruled that there was no past persecution or no well-founded theory. So, that brings us to the particular facts of this case. Yes, Your Honor. And what were the facts in this case that established past persecution? Yes, Your Honor. In this case, we had a circumstance where the Petitioner had been a member of a political party called the Civic Alliance Party, which was opposed to the then-ruling Fort Sleuth Party, which was the new name for the Congress Party. He was accosted on the street in January or February of 1995 by three men who told him that he must leave the Civic Alliance Party, and when they refused, they started striking him. He took steps later, I don't remember the exact steps, but he took alternative routes home, and they managed not to accost him again. But when he did go to the police station to complain about being attacked, they said, well, they can't help him, and they suggested he go out and find the perpetrator himself. Did they say that unless he could identify the perpetrators, they wouldn't be able to help him? Well, they may have said that. I think that the gist of it was that they weren't going to do anything to help him. I mean, this is the police. When one goes to the police in most countries, one isn't told, well, I've just been assaulted, and they say, well, you go out and find out who assaulted you. Was he able to describe the people that did that to him? No, it was at night, Your Honor. Yes, so he couldn't give the police any physical description. No, Your Honor. So is your argument that if one went into a police office anywhere and was unable to give a description of the perpetrator, that the police would still pursue an investigation of that? Well, I think so, Your Honor. I mean, I was a district attorney for a number of years, and we had a lot of times when we had people that couldn't identify them. No description? No description and no identification of the person, and the police still pursued? I was a prosecutor, too. How did you then connect them to the crime, the people you prosecuted? Well, one would attempt to gather fingerprints. You might go out and see if neighbors had, you know, heard anything or something like that. There was a slight clue that they told him he better leave the Civic Alliance Party. Now, most street muggings don't involve interrogations about one's political associations. So I thought they could have done more than nothing, and they basically told him they weren't going to do anything. And I agree that it would not have been a good police case to take, but on the other hand, it was not a clueless case and not a situation where one would say, well, you go out and see if you can find these people or identify them, and basically they were telling him they weren't going to help him. How much of an interview did he get from the local police when he complained? I don't know, Your Honor. I'm not sure how much of that he got. Somebody might ask, well, how did he know that, or how did they know that he was a member of this political party? Did they wear some kind of special uniform or something? I don't know that, Your Honor. I don't think there's a uniform at the party. I mean, is this just his statement that two strangers approached me at night and said, leave this political party or you're going to be in bad trouble, and so now I can't go back to Romania? There isn't any other immediate corroboration of that, Your Honor. On the other hand, there wasn't a finding of adverse credibility against him either by the immigration judge, so I think that it's reasonable to conclude that it was a correct statement. There's some more facts, if I can get into them, Your Honor, that make this case, I think, more fulfilling. In this situation, too, there was a – after that, there were a few phone calls. I think he said ten or so calls to his house telling him to leave the Civic Alliance Party or he and his family would be killed. And his son was apparently beaten up at school. Now, he has two sons. Now, the record for the – the brief for the government says that he had one son who was not armed who was 28 years old. Well, he's got two sons, one who's much younger who was beaten up and threatened at school, too, and his father didn't leave the Civic Alliance Party. What's your best case authority for the proposition that threats and beating constitute persecution? Well, I think the Rwanda case, there wasn't even a beating in the Rwanda case, and I don't think there was one in Lim either. In Rwanda, what had happened was the fellow had been a member of – he'd been a member of a political party, and he'd been followed around by – he had received some specific threats. I agree there were more threats, and they were probably more specific, but he hadn't actually been harmed. And then he said some people were following him around in a car. In the Lim case, the fellow had been a member of a police squad that had been going after guerrillas. He quit that after receiving some threats, and for six years he practiced law, and then some of his colleagues started getting bumped off, and then he left. But in neither one of those cases was there actually a laying on hands of the person. And then we have that here, and we also have the person's family friend here, which we did not have in Rwanda. We did not have in Lim, and I guess threats to a minor child are more significant. Was there evidence that other members of this political group were being harassed by thugs and what have you in that community? Well, I don't know of any evidence directly to show that. How do we know this isn't just an isolated case of somebody getting attacked for some reason? An isolated case? That wouldn't mean he would be persecuted, Your Honor. In fact, he has to show that he's being singled out for persecution. And remember, he's a professor over there in Romania too. He's somewhat of a prominent person. They don't necessarily have to pick a person who's not so prominent and single them out. It's probably more effective to persecute people that are more in the public eye, and that's what I'm thinking is happening here. So he was something of a public figure. Well, I mean, to the same extent any teacher might be here or something like that, but I guess the teacher is sort of a public figure. Counselor, you cited Lim to support your premise, but didn't the court in Lim find no past persecution? Yes, true, but they did find a well-founded fear of future persecution. So is that what you're hinging, your argument, a well-founded fear of future persecution as opposed to past persecution? Well, the critical distinction is that if we are to sum up, I better do that. The critical distinction is the well-founded fear shifts the burden over to the government to come through with rebuttal of change of circumstances. I'm arguing that they haven't done that. I'm also saying that in Lim where it's factually distinguished because here we actually have beatings and whatnot. In Lim we didn't have that, although we did have some murder of cause. So you're asserting both past persecution and a well-founded fear of future persecution? That is correct, Your Honor. I don't have anything further. I'd like to resume the rest of the time. All right. Thank you. Good morning. May it please the Court, my name is Marion Guyton. I'm with the U.S. Department of Justice, and I'm representing the respondents to the attorney general in this case. Notwithstanding the comments just made by counsel for petitioner, the fact remains that the immigration judge who heard the petitioner's claim found no past persecution and no well-founded fear of future persecution  Petitioner's claims regarding his dissatisfaction with the progress toward democracy in his native country does not bring him within the protective end of the Immigration and Nationality Act. Petitioner failed to demonstrate on this record that he would be subjected to any greater risk of harm in Romania on account of political opinion or any other ground protected under the act. By the government or by persons the government is unable or unwilling to control. The final agency determination that the petitioner here failed to establish eligibility for asylum and or withholding of removal is supported by substantial evidence. Substantial evidence supports the agency's finding that the petitioner failed to demonstrate past persecution or well-founded fear. Under the deferential standard review applicable here, the government is of the view that the evidence of record does not compel a contrary finding. Accordingly, the board's decision should be affirmed and the petition for review should be denied. Any questions? No. Thank you, counsel. Rebuttal? I have a rebuttal. Thank you. The case just argued is submitted. That completes the calendar for the day and for the week. This court is in recess. All rise. This part of the session stands adjourned. I think they're going to do this for a while. He took this. So, you know, I said this was perfect. There's one more thing. Thank you.
judges: Goodwin, Alarcon, Rawlinson